UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------x
:
NERO L. WELLS, JR.,                             :
                                                :
                      Plaintiff,                :    08 Civ. 9705 (TPG)
                                                :
           – against –                          :    **OPINION**
                                                :
NEW YORK CITY POLICE PENSION                    :
FUND, and THE UNITED STATES OF                  :
AMERICA,                                        :
                                                :
                      Defendants.               :
------------------------------------------------x

Plaintiff Nero Wells, Jr., a former New York City Police Department officer, brings this action *pro se* against the United States of America and the New York City Police Pension Fund ("PPF") concerning an alleged tax overpayment to the Internal Revenue Service. Plaintiff claims that PPF improperly deducted, and the IRS wrongly collected, on a tax levy against plaintiff's pension benefits after the levy had been satisfied. He seeks $19,033.11, the amount of the alleged overpayment, as well as interest and punitive damages.

Currently before the court are the Government's motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and for summary judgment under Fed. R. Civ. P. 56 and PPF's motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

The Government's motion for summary judgment and PPF's motion to dismiss are granted, and the case is dismissed in its entirety.

## BACKGROUND

The Facts

The following facts are undisputed, except where otherwise indicated.

On April 19, 1985, the IRS served a "Levy on Wages, Salary, and Other Income" on PPF for $8,711.90 in unpaid income taxes, penalties, and interest.[1]  According to the Levy, these unpaid income taxes, penalties, and interest are associated with plaintiff's returns covering the tax periods ending December 31, 1978, December 31, 1979, December 31, 1980, December 31, 1981, and December 31, 1983.  The Levy further specified that additional interest and late-payment penalties would continue to accrue until the balance was paid in full.

Pursuant to a Form 433-D Installment Agreement with the IRS, plaintiff agreed in October 1986 to have $100[2] per month deducted from his pension to satisfy the Levy.

On November 29, 2000, the IRS sent a Notice of Release of Levy ("Release") to PPF at 1 Centre Street, Room 200N, New York, NY 10007.

---

[1] While the complaint states that the Levy is dated from 1983, the exhibits attached to the complaint indicate that the Levy is from 1985.
[2] Although plaintiff claims that $110 was subtracted from his pension fund on a monthly basis, the Form 433-D Installment Agreement with the IRS attached to the complaint shows that plaintiff agreed to have $100 debited from his pension fund to satisfy his outstanding tax obligations.  The documents submitted by the Government corroborate this amount.

A second Notice of Release of Levy ("Second Release") was mailed to the Comptroller of the City of New York at the same address on February 12, 2001. PPF asserts that at no time has it been located at the 1 Centre Street address and therefore did not receive the notice of release.

Plaintiff alleges that he became aware of purported overpayments to the IRS from his pension fund in April 2006. He contacted PPF, which indicated in a March 23, 2007 letter that although it appeared that the Levy had been satisfied, it was never terminated because PPF never received a release from the IRS. PPF estimated that it had overpaid the IRS by approximately $19,033.11 and provided plaintiff with a schedule outlining all tax levy payments made to the IRS from plaintiff's pension fund on his behalf. Based on this document, PPF calculated that plaintiff's original lien of $6,726.54 had been repaid by February 1991. This schedule, however, does not take into account any penalties or interest attributable to plaintiff's late payments.

Armed with the payment schedule from PPF, plaintiff submitted a Form 843 claim to the IRS on April 4, 2007 requesting a refund of the alleged overpayment of $19,033.11 from his pension fund for the tax periods covering 1985 through 2006. On May 16, 2007, the IRS responded to plaintiff's claim, informing him that while it could confirm receipt of the extra payments from PPF, any overpayments had been refunded to plaintiff with interest. After further investigation, the Taxpayer Advocate Service notified plaintiff in a September 24, 2007

letter that some of the excess payments had been applied to a federal debt, such as a student loan, as a set-off and that any refund was returned to him after such debt was extinguished.

The Government has provided the court with copies of plaintiff's tax receipts from 1978 to 2008.  While it appears from the Government's submissions that payment of the Levy was fulfilled in the mid-1990s, the tax transcripts indicate that any overpayments withdrawn from plaintiff's pension benefits either were:  (1) credited to his federal tax deficiencies, including liabilities stemming from unpaid taxes in 1976 and 1977 as well as penalties and interest assessed for plaintiff's late tax payments; (2) remitted to the State of New York to satisfy plaintiff's obligations for past-due child support; (3) provided to the U.S. Department of Education ("DOE") to satisfy past-due liabilities for a Stafford Loan for tuition costs incurred by plaintiff at Empire Technical School,[3] or (4) refunded to plaintiff with interest.  The tax transcripts also show that based on his overpayments, plaintiff received a refund from the IRS for every year from 1997 to 2006.  In fact, plaintiff's 1985 tax transcript reveals that the IRS reimbursed plaintiff $700 more than he was owed for that year.[4]

Procedural History

Plaintiff filed his original complaint on November 10, 2008.  That day, Judge Harold Baer of this court issued an order directing plaintiff to

---

[3] Specifically, overpayments pertaining to tax years 1980, 1986, 1996, and 1997 were sent to the State of New York and the DOE to cover plaintiff's outstanding child support and Stafford Loan payments.
[4] This refund was allocated to plaintiff in several installments in 2000 and 2001.

provide detailed facts in support of his claims and to address PPF's argument that it never received either the Release or the Second Release. Plaintiff subsequently amended his complaint on January 9, 2009. On March 19, 2009, Judge Baer issued an order declaring that plaintiff had failed to comply with the November 10, 2008 order. Nonetheless, Judge Baer granted plaintiff 30 days to amend his complaint to: (1) set forth the steps that he took to exhaust his administrative remedies, and (2) attach all documents to which he refers in the complaint. Plaintiff then filed the second amended complaint on April 16, 2009. The case subsequently was assigned to the undersigned judge.

On August 25, 2009, PPF moved to dismiss the second amended complaint under Fed. R. Civ. P. 12(b)(6). Plaintiff opposed the motion. On November 2, 2009, the court directed the Government to move or otherwise respond to the second amended complaint notwithstanding the Government's position that it had never been served properly. Accordingly, on February 9, 2010, the Government moved to dismiss the second amended complaint under Fed. R. Civ. P. 12(b)(1), and plaintiff opposed.

After holding a conference with the parties on March 23, 2010, the court issued an order on March 24, 2010 denying both motions with leave to renew after the Government filed a complete accounting of plaintiff's taxes.

On April 20, 2010, the Government renewed its motion to dismiss and also moved for summary judgment on the grounds that payments withdrawn from plaintiff's pension benefits either were applied to federal tax deficiencies or other debts or were refunded to plaintiff. In support of the Government's motion, it submitted the declaration of Zachary A. Sharpe, an attorney employed by the IRS, which details plaintiff's tax payments and attaches plaintiff's tax account transcripts for the tax years 1978 through 2008 ("Sharpe Declaration"). Although the Sharpe Declaration contains true and correct copies of plaintiff's tax account transcripts, the Government requested permission to file a supplemental declaration attaching the relevant Certifications of Assessments and Payments ("Certifications"). On April 29, 2010 the court granted the Government's request to submit the supplemental declaration.

On April 30, 2010, PPF renewed its motion to dismiss. Both the Government's motion to dismiss and for summary judgment and PPF's motion to dismiss are now before the court.

The court held a conference on February 10, 2011 and requested the Government to make a further submission that would make the Government's accounting clearer. A second supplemental declaration of Mr. Sharpe was submitted on March 11, 2011, which provided a satisfactory response to court's request.

The various submissions by the Government demonstrate the following. As described above the Levy was to collect $8,711.90.

Between 1985 and 2007, the IRS collected $25,613.21 pursuant to the Levy.  Thus, the IRS collected $16,901.31 more than the $8,711.90 to be collected pursuant to the levy.  As of the conclusion of the tax period ending December 31, 2007, the IRS has refunded to plaintiff $8,687.02 of the $16,901.31 of tax overpayments collected pursuant to the Levy, as well as $129.41 in overpayment interest.  Of the remaining $8,214.29 in levy payments, $5,814.29 has been applied by the IRS to the payment of other outstanding IRS tax liabilities, pursuant to 26 U.S.C. § 6402(a), and $2,400.00 has been applied to the payment of non-IRS debts, pursuant to 26 U.S.C. § 6402(c), (d).  Funds from overpayments for plaintiff's tax years ending December 31, 1980; December, 31, 1986; December 31, 1996; and December 31, 1997 were remitted to the State of New York to satisfy plaintiff's obligations for past-due child support under 26 U.S.C. § 6402(c), and to the DOE to satisfy past-due liabilities for a Stafford Loan covering tuition costs incurred by plaintiff at Empire Technical School under 26 U.S.C. § 6402(d).

The conclusion is that, although the Government collected more than it was due under the Levy, that discrepancy has been entirely made up.  The government does not owe any money to plaintiff.  Nor does PPF.

## DISCUSSION

A:  <u>Statute of Limitations</u>

28 U.S.C. § 1346(a)(1) provides for suit in the federal district courts against the United States in any action for recovery of any internal

revenue tax that is claimed to have been illegally or erroneously assessed or collected.  See United States v. Forma, 42 F.3d 759, 763 (2d Cir. 1994).  As a prerequisite to bringing an action in federal court for the recovery of any tax alleged to have been collected improperly, a taxpayer must file a claim for refund or credit with the IRS.  See 26 U.S.C. § 7422(a); United States v. Clintwood Elkhorn Mining Co., 128 S. Ct. 1511, 1514 (2008).

The time to file a claim with the IRS is set forth in Section 6511(a) of the Code:

> Claim for credit or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid.

This time limit is not subject to equitable tolling.  See United States v. Brockamp, 519 U.S. 347, 354 (1997).  If a taxpayer has not filed a timely refund claim, the court lacks subject matter jurisdiction over a civil action under 26 U.S.C. § 7422.  See United States v. Dalm, 494 U.S. 596, 608-09 (1990); Kirsh v. United States, 131 F. Supp. 2d 389, 391 (S.D.N.Y. 2000), aff'd 258 F.3d 131 (2d Cir. 2001).  An informal claim is sufficient to satisfy the statutory prerequisite provided that it alerts the IRS that the taxpayer seeks a refund and indicates the grounds upon which the taxpayer's claim is based.  See Forma, 42 F.3d at 767 n.13.  The taxpayer bears the burden of demonstrating compliance with the

statutory procedural requirements.  See Mangione v. I.R.S., No. 97 Civ. 9438 (JGK), 1998 WL 401538, at *2 (S.D.N.Y. July 17, 1998).

Here, plaintiff filed his administrative claim with the IRS on April 4, 2007 challenging overpayments from 1985 through 2006.  These alleged excess payments stem from the Levy on plaintiff's pension benefits resulting from tax deficiencies on returns filed in the late 1970s and early 1980s.  Because more than three years have passed since these returns were filed with the IRS, the applicable statute of limitations restricts plaintiff's claim for a refund to two years from when any alleged overpayments were made.  Since plaintiff filed his administrative claim on April 4, 2007, Section 6511(a) confines plaintiff's refund claim to any purported tax overpayments made between April 4, 2005 and April 4, 2007.  Accordingly, under the relevant statute of limitations, the court lacks subject matter jurisdiction over plaintiff's claim for a refund of any purported tax overpayments prior to April 4, 2005.  This would leave the rest of 2005, 2006, and perhaps a small period of 2007 as not barred by the statute of limitations.

B.  Unlawful Deductions by PPF

As part of its policy of encouraging efficient collection of federal taxes and voluntary compliance with the tax laws, see United States v. Nat'l Bank of Commerce, 472 U.S. 713, 721 (1985), Congress has declared that any person who honors an IRS levy against a taxpayer's property "shall be discharged from any obligation or liability to the

delinquent taxpayer and any other person with respect to such property." 26 U.S.C. § 6332(e). "If, on the other hand, the custodian refuses to honor a levy, he incurs liability to the Government for his refusal." Nat'l Bank of Commerce, 472 U.S. at 721. In fact, there are only two circumstances that justify noncompliance with a levy: (1) either the person levied upon is not in possession of the property; or (2) the property is subject to prior judicial attachment. See Schiff v. Simon & Schuster, Inc., 780 F.2d 210, 212 (2d Cir. 1985). Thus, money damages against a person who has complied with an IRS levy are barred. See Smith v. Kitchen, No. 97-1237, 132 F.3d 43, 1997 WL 768297, at *3 (10th Cir. Dec. 12, 1997).

A challenge to the validity of a levy does not alter the obligation to comply with the levy. See Schiff, 780 F.2d at 212. "The relevant code sections and applicable case law state clearly and unambiguously that a custodian of a delinquent taxpayer's right to property is not excused from honoring a tax levy upon such tax property simply because the taxpayer objects to the levy." Jerkins v. I.R.S., Civ. A. No. 96-0260-CB-S, 1996 WL 604491, at *2 (S.D. Ala. Aug. 6, 1996), aff'd 117 F.3d 1432 (11th Cir. 1997).

PPF argues that the address appearing on both the Release and the Second Release – 1 Centre Street, Room 200N, New York, NY 10007 – does not correspond to PPF's current or former location, so the releases were never delivered to PPF. Rather, from 2000 to 2001, the years the

Release and Second Release were issued, PPF's address was 1 Police Plaza, Room 1010, New York, NY 10038. In fact, this was the address to which the Levy originally was delivered in 1985. Because PPF failed to receive either release, it contends that it properly continued debiting $100 monthly from plaintiff's pension benefits.

Despite Judge Baer's November 10, 2008 order, plaintiff utterly fails to address PPF's contention that it never received the releases, merely reasserting the claims alleged in the complaint. Indeed, plaintiff supplies no facts or evidence to undermine the PPF's position that it did not receive either of the improperly addressed releases. Moreover, plaintiff's complaint does not aver, and there is no basis to conclude, that either situation excusing noncompliance with a levy existed. Under such circumstances, because PPF simply was complying with the Levy, as it was required to do by law, it cannot be liable to plaintiff for transmitting payments from his pension to the IRS in accordance with 26 U.S.C. § 6332, irrespective of the Levy's continued validity.

C. No Amount is Owed

The legal basis just discussed must, however, be taken in the context of the fact that all the money involved in the excess recovery on the Levy has been applied to the income tax obligations or other debts owed by plaintiff, to which the levied money could be lawfully applied, or to refunds to plaintiff himself. Nothing is owed in this action to plaintiff either by the Government or PPF.

## CONCLUSION

The Government's motion for summary judgment and PPF's motion to dismiss are granted. The case is dismissed and the Clerk of the Court is directed to close this case.

This disposes of the motions listed as documents 28 and 36 on this docket.

SO ORDERED.

Dated: New York, New York
        March 31, 2011

*[signature]*

Thomas P. Griesa
U.S.D.J.